IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE PECK and CRYSTAL KUNTZ, <br><br>  Plaintiff, <br><br> v. <br><br> WEST AURORA SCHOOL DISTRICT 129, <br> LUANNE KELSEY, in her individual capacity, <br> TRICIA KEATING, in her individual capacity, <br> ANGIE COURTIN, formerly Angie Jackson, in her <br> individual capacity, and KENNETH JOHN KANE, <br><br>  Defendants. | No. 06 C 1153 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Stephanie Peck ("Peck") and Crystal Kuntz ("Kuntz") have sued the West Aurora School District 129 ("School District"), its high school principal Luanne Kelsey ("Kelsey"), Counselor Tricia Keating ("Keating"), Dean Angie Courtin ("Courtin"), and teacher Kenneth John Kane seeking compensation and punitive damages for alleged violations of various constitutional and state law rights arising out of Kane's sexual and racial abuse.

Plaintiffs have alleged two causes of action under federal law. Count I is brought against the School District for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 in the context of a hostile learning environment. Count II is brought against the School District, Kelsey, Keating, Courtin and Kane for violation of plaintiffs' constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment. The remaining four counts are brought under state law. Count III is brought against the School District, Kelsey, Keating, and Courtin for negligence and willful and wanton misconduct for various acts and omissions in handling plaintiffs' alleged complaints to school personnel. Count IV is brought

against the School District and Kelsey for negligent supervision.  Count V is brought against Kane for battery.  Count VI is brought against Kane, Kelsey, Keating, and Courtin for intentional infliction of emotional distress.

The School District, Kelsey, Keating, and Courtin ("defendants") have moved to dismiss all claims against them and to strike the prayer for punitive damages for all counts.  Kane has answered plaintiffs' complaint and is not a party to the motion to dismiss.  For the reasons discussed below, defendants' motion to dismiss is granted in part and denied in part.

## FACTS[1]

Plaintiffs allege that Kane subjected them to ongoing and repeated sexual and racial harassment, sexual molestation and improper touching while they were students in his class.  They further contend that various school officials, including the individual defendants, and the School District took no action to stop Kane's alleged conduct.

Plaintiff Peck was a student at West Aurora High School during the 2003-2004 school year, and alleges that she was in Kane's foods and hospitality class.  Peck contends that on various occasions, Kane would grab her on the hips and press her against his body so that she could feel his genitals rubbing against her back and buttocks.  She also alleges that Kane would sometimes walk behind her and put his hand on her buttocks.

Around January 2004, Peck informed Counselor Keating of Kane's conduct and asked to be removed from his class.  Keating defended Kane and counseled Peck against dropping the course.  According to Peck, Kane similarly harassed and molested another student, with whom

---

[1] The facts are taken from plaintiffs' complaint and are presumed true for the purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  Perkins v. Silverstein, 939 F.2d 463, 466 (7th Cir. 1991).

Peck went to see Keating a second time. Keating told the girls they would receive a failing grade if they dropped Kane's class.

Kane's conduct continued and Peck complained to Keating a third time around April 2004. Again, Keating disregarded Peck's complaints. In May 2004, Peck complained to Keating a fourth time about Kane's conduct and sought to drop his class, but again Keating took no action. One week later, Peck allegedly got into an argument during class with Kane, who made racial remarks about her. Peck contends she immediately informed Dean Courtin. Peck asserts that despite her various complaints, defendants failed to take any action against Kane or prevent further harassment and molestation of Peck and other students.

Plaintiff Kuntz was enrolled in Kane's food and hospitality course during the 2004-2005 school year. Kuntz contends that Kane would rub her back and shoulders and grope her breasts, as well as make inappropriate sexual and racial comments towards and about her on various occasions. She told her aunt about Kane's conduct, and the aunt informed Counselor Dotti LaVoy, who then informed defendant Kelsey. Kuntz asserts that the School District took no action after Kelsey was informed of Kane's improper conduct.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim, the court will dismiss a claim only where "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Chaney v. Suburban Bus Div., 52 F.3d 623, 627 (7th Cir. 1995) (*quoting* Fed. R. Civ. P. 12(b)(6)). The court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Perkins, 939 F.2d at 466. The purpose of a motion to dismiss is to test the sufficiency of the

complaint, not to decide the merits. Gibson v. City of Chi., 910 F.2d 1510, 1520 (7th Cir. 1990). "One pleads 'claims' (which is to say, grievances) rather than legal theories and factual specifics . . . [and] an obligation to allege some matter in a complaint does not entail an obligation to 'establish' that issue at the pleading stage." Simpson v. Nickel, 450 F.3d 303, 305-06 (7th Cir. 2006).

## DISCUSSION

### Federal Law Claims

### Count I – Title IX

In Count I plaintiffs allege that the School District violated their rights under Title IX, which provides that "[n]o person . . . shall, on the basis of sex, be denied the benefits of, or be subjected to any discrimination under any education program . . . receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX thus "prohibits sexual discrimination in educational programs and activities which receive federal funds." Mary M. v. N. Lawrence Cmty. Sch. Corp., 131 F.3d 1220, 1224 (7th Cir. 1997). A private right of action against educational institutions exists under Title IX. Cannon v. Univ. of Chi., 441 U.S. 677, 694-96 (1979). To state a claim for hostile environment sexual harassment under Title IX, the plaintiff must allege that: "(1) plaintiff belongs to a protected group; (2) plaintiff was subjected to harassment; (3) the harassment was based on sex; (4) the harassment was so pervasive or severe that it altered the conditions of plaintiff's education; and (5) knowledge by school officials." Id at 1228 (citations omitted). The fifth prong requires that a school official with "authority to address the alleged discrimination and to institute corrective measures on the [school's] behalf" have "actual knowledge of discrimination in the [school's] programs and fails adequately to respond."

4

Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998). The response taken "must amount to deliberate indifference to discrimination," which is essentially an official refusal to take action. Id.

The School District centers its argument around the fifth prong, arguing that, (1) Peck cannot establish that Kelsey had actual knowledge of and was deliberately indifferent to Kane's alleged conduct, (2) Kuntz never told anyone with the authority to implement corrective measures about the alleged conduct, and (3) any alleged conduct stopped following her complaint to LaVoy. Defendants ask too much of plaintiffs at this stage of the case. Plaintiffs need not establish Kelsey's actual knowledge and deliberate indifference to Kane's conduct, but instead must merely make allegations to that effect. Plaintiffs allege that "[v]arious school officials, including Defendant Kelsey and Defendant Courtin, had authority vested in them by the School District with the duty to supervise the conduct and actions of Defendant Kane," and that both Kelsey and Courtin "knew about Defendant Kane's conduct" but "failed to use their authority to end [his] improper conduct." Further, plaintiffs allege that the School District had actual notice and knowledge, but failed to act to prevent further harm to students, demonstrating deliberate indifference and conscious disregard. These allegations suffice to state a Title IX claim for a hostile learning environment against the School District.

The School District also argues that Peck cannot establish that Courtin had any authority to implement corrective measures under the Illinois School Code, which provides that "principals direct, supervise, evaluate and discipline all teachers, assistant principals and other employees." 105 ILCS 5/34-8.1. This statute does not foreclose the possibility that Keating or Courtin could "institute corrective measures." It could be reasonably inferred that high school

5

counselors and deans can investigate teacher conduct, remove students from classes, or call the police. These would all qualify as "corrective measures." Section 34-8.1 is not enough to establish as a matter of law that Kelsey alone possessed the authority to institute corrective measures. Because plaintiffs allege that "Courtin had the authority to end defendant Kane's improper conduct" and "Courtin knew about [the] conduct," plaintiffs have stated a claim for hostile learning environment under Title IX against the School District. Accordingly, the School District's motion to dismiss Count I is denied.

## Count II - § 1983 Deprivation of Bodily Integrity

In Count II plaintiffs allege a claim pursuant to 42 U.S.C. § 1983, based on defendants'[2] violation of their constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment. The School District argues that plaintiffs fail to state a claim against it because the District has no express or widespread policy which was applied to Kane's conduct, and Kelsey, Keating, and Courtin are not final policymakers.

To recover damages from school officials in their individual capacities in a § 1983 case, the school official must be "personally responsible for the deprivation of a constitutional right." Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). Knowledge, approval, condoning or turning a blind-eye to unconstitutional conduct will suffice. Id. The school official "need not be shown to have acted according to municipal policy or custom to be held liable." Venters v. City of Delphi, 123 F.3d 956, 966 (7th Cir. 1997). Public officials may have qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Behrens v. Pelletier, 516 U.S. 299, 305 (1996) (*quoting*

---

[2] Count II is brought against all defendants including Kane, who is not a party to this motion to dismiss.

6

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity "generally turns on the objective legal reasonableness of the action . . . assessed in light of the legal rules that were clearly established at the time it was taken." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (citations and quotations omitted).

Kelsey, Keating, and Courtin contend that Count II fails to state a claim because Kelsey had no knowledge of Kane's conduct, Courtin did not consent to Kane's conduct, and Keating is merely accused of inaction.[3] Plaintiffs allege that "Defendant Kelsey, Defendant Keating, and Defendant Courtin acted with deliberate indifference and conscious disregard . . . when they failed to act, failed to thoroughly investigate [the] allegations, and failed to prevent further harm from occurring." Moreover, plaintiffs allege that "School District 129 and its employees and administrators turned a blind eye towards Defendant Kane's conduct." Clearly, plaintiffs have alleged that all three individual defendants knew about and turned a blind-eye to Kane's alleged unconstitutional conduct. Plaintiffs' allegations are sufficient to state a claim for deprivation of bodily integrity under § 1983 against Kelsey, Keating, and Courtin in their individual capacities.

Kelsey, Keating, and Courtin argue they have qualified immunity "because the law in 2003-2005 did not clearly establish that their actions fell outside of a clearly established constitutional norm." To the contrary, however, the law in this area during 2003-2005 was well established. See Stoneking v. Bradford Area Sch. Dist., 882 F2d. 730 (3d Cir. 1989) (principal and assistant principal were not entitled to qualified immunity for allegedly condoning sexual

---

[3] These arguments are made in defendants' reply brief. Defendants initially argued that it is "improper to consider [the § 1983] claims as individual claims" because there are no allegations that defendants acted outside the scope of their employment. Plaintiffs can sue defendants in their individual capacities so long as defendants were acting under the color of law and took part in the alleged constitutional deprivation regardless of whether they were acting within the scope of their employment. See Gentry, 65 F.3d at 561.

7

misconduct of teacher); Doe v. Bd. of Educ. of Consol. Sch. Dist. 230, 18 F. Supp. 2d 954 (N.D. Ill. 1998) (genuine issue of material fact as to whether defendants turned a blind-eye to unconstitutional conduct prevented summary judgment on issue of qualified immunity). If Kelsey, Keating, or Courtin had knowledge of, approved of, condoned, or turned a blind-eye to Kane's unconstitutional conduct, they would not be entitled to qualified immunity. Plaintiffs specifically allege that all three defendants knew of Kane's unconstitutional conduct throughout the complaint. Moreover, it is reasonable that a principal, dean, and counselor should have known that ignoring complaints of sexual harassment would violate the constitutional rights of a complaining student. Plaintiffs have alleged that Kelsey, Keating, and Courtin had actual knowledge of Kane's alleged unconstitutional conduct and failed to act. Thus, Kelsey, Keating, and Courtin cannot receive qualified immunity.

Municipalities, including school districts, may not be held liable for the actions of their employees under the doctrine of respondeat superior in a § 1983 case. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-91 (1978). "Rather, municipal liability attaches only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [for which] the government as an entity is responsible under § 1983." Cornfield v. Consol. High Sch. Dist. No. 230, 991 F.2d 1316, 1324 (7th Cir. 1993) (citations omitted). A policy may be established by inaction or custom. Id. Thus, the School District may be liable under § 1983 for a civil rights violation if it: (1) had an express policy that, when enforced, caused a constitutional deprivation; (2) had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3)

8

plaintiff's constitutional injury was caused by a person with final policymaking authority. McCormick v. City of Chi., 230 F.3d 319, 324 (7th Cir. 2000). There is no heightened pleading standard in a § 1983 municipal liability case. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993).

Defendants argue that plaintiffs cannot show that the School District had either an express or widespread policy that was applied to the conduct in the instant case, and that plaintiffs cannot show that Kelsey, Keating, and Courtin are final policy-makers. Plaintiffs argue that the School District's inaction "promoted a widespread policy that encouraged a climate to flourish wherein the plaintiffs and other students were victimized" and contend that Kelsey has final policy-making authority.

Plaintiffs misconstrue the widespread practice or policy requirement. They allege in their complaint that the School District, Kelsey, Keating, and Courtin, by ignoring Plaintiff Peck's complaints, "promoted and established a school policy, practice, or custom" that encouraged a climate of victimization. For Monell liability to attach, however, the policy, practice, or custom must be established prior to and be the cause of the alleged illegal conduct. In the instant case, plaintiffs allege that the conduct at issue created the policy, rather than occurring as a result of previously existing policy. A widespread policy must be "permanent and well settled," and the injury must have occurred because of the policy's existence. McCormick, 230 F.3d at 324. Plaintiffs allege nothing to this effect.

Plaintiffs also fail to allege that Kelsey, Keating, or Courtin are final policy-makers for the purpose of municipal liability. To state a claim against a municipality for a violation of the constitutional right to bodily integrity under § 1983, plaintiffs must allege that their injury was

9

caused by a school official with final policy-making authority. Although plaintiffs argue this point in their response brief, they fail to allege it in their complaint. Consequently, defendants' motion to dismiss Count II is granted.

## State Law Claims[4]

## Count III – Negligence / Willful and Wanton Misconduct

In Count III, brought against all defendants, plaintiffs allege state law claims for negligence and/or willful and wanton misconduct. Defendants argue that the Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") bars both causes of action. 745 ILCS 10/1-101.

## Negligence

Defendants argue that plaintiffs' negligence claims are barred by the Tort Immunity Act, which provides immunity to public employees exercising discretion and determining policy. Plaintiffs deny that defendants had discretion in failing to contact the Department of Children and Family Services ("DCFS"), as required by the Illinois Abused and Neglected Child Reporting Act ("Reporting Act"), 325 ILCS 5/1 and 89 Ill. Admin. Code § 300 app. B, and by failing to establish adequate training, procedures and lines of communication to report any serious alleged inappropriate misconduct, as required by the Title IX regulations.

The Tort Immunity Act, 745 ILCS 10/2-201, provides: "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or

---

[4] In their arguments for each state claim, defendants argue that plaintiffs' pleadings violate Illinois pleading requirements by combining causes of action. See 735 ILCS 5/2-603(b). The parties are in federal court and are required to abide by the Federal Rules of Civil Procedure, not the pleading requirements of Illinois state court. See AXA Corporate Solutions v. Underwriters Reinsurance Corp., 347 F.3d 272, 277-78 (7th Cir. 2003).

omission in determining policy when acting in the exercise of such discretion even though abused."

"[A]n employee may be granted immunity if he holds *either* a position involving the determination of policy *or* a position involving the exercise of discretion . . . [but] immunity will not attach unless the plaintiff's injury results from an act performed or omitted by the employee in determining policy *and* in exercising discretion." Harinek v. 161 N. Clark St. Ltd. P'ship, 181 Ill. 2d 335, 341 (Ill. 1998) (emphasis in original). "[D]iscretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." Snyder v. Curran Twp., 167 Ill. 2d 466, 474 (Ill. 1995). The Reporting Act declares that any "school personnel . . . having reasonable cause to believe a child known to them . . . may be an abused child or a neglected child shall immediately report" the suspected abuse to the DCFS. 325 ILCS 5/4.

Defendants rely heavily on Doe v. Board of Education of Consolidated School District 230, 18 F. Supp. 2d at 962, in which this court held that the duty to report sexual abuse under the Reporting Act is discretionary. Plaintiffs distinguish this case, citing Doe v. Dimovski, 336 Ill. App 3d 292, 296-98 (2d. Dist. 2003). In Dimovski, the Illinois Appellate Court held that school personnel do not have the discretion to determine what constitutes "reasonable cause to believe" or if abuse occurred. Dimovski, 336 Ill. App. 3d at 297. "[O]nce school personnel suspect or should suspect that a child may be sexually abused, they are divested of any discretion." Id. In determining whether school personnel have discretion in reporting allegations of sexual abuse, there are two possibilities. Either school personnel have no discretion at any time and every

allegation must be reported, or school personnel may exercise discretion at some point after an allegation is made. This court finds that the latter scenario is correct.

Dimovski acknowledges that the Reporting Act requires allegations of sexual harassment to be "credible." Id. Therefore, a school official must determine whether a report of sexual abuse is credible. This determination of credibility necessarily requires the exercise of discretion. Thus, Kelsey, Keating, Courtin and the School District are immune from liability from Plaintiffs' negligence claim under the Tort Immunity Act.

Plaintiffs also argue that federal regulations for effectuating Title IX[5] deprive defendants of any discretion in establishing adequate training, procedures and lines of communication to report any serious alleged inappropriate misconduct. Failure to comply with the regulation, however, "does not establish the requisite actual notice and deliberate indifference for a private right of action," and "failure to promulgate a grievance procedure does not itself constitute 'discrimination' under Title IX." Gebser, 524 U.S. at 292. Further, although the Department of Education has the ability to enforce the requirement administratively, the Supreme Court has never held "that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements." Id. Because plaintiffs cannot directly sue defendants for a violation of the regulation, such violation cannot support a claim for negligence. The fact that the federal regulation leaves defendants no discretion to establish

---

[5] 34 C.F.R. § 106.8(a) provides:
(a) Designation of responsible employee. Each recipient shall designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under this part, including any investigation of any complaint communicated to such recipient alleging its noncompliance with this part or alleging any actions which would be prohibited by this part. . . .
(b) Complaint procedure of recipient. A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

adequate procedures, training, and lines of communication does not mean that defendants have no discretion to determine how those procedures are established and executed. Accordingly, to the extent plaintiffs' claim sounds in negligence, defendants' motion to dismiss Count III is granted.

### Willful and Wanton Misconduct

Plaintiffs argue that all defendants were willful and wanton in failing to properly supervise and monitor Kane and failing to act on the information provided by plaintiffs. Defendants contend they are all immune under § 3-108(b) of the Tort Immunity Act.[6] Clearly, plaintiffs' allegation that defendants were willful and wanton in their failure to properly monitor and supervise Kane is not barred by § 3-108(b). This claim, however, belongs in Count IV, plaintiffs' negligent supervision claim, and will be considered there. All other allegations in Count III however, including plaintiffs' allegations of a failure to act upon information provided by plaintiffs, do not fall under § 3-108(b) of the Tort Immunity Act, but rather under § 2-201. Because § 2-201 does not contain an exception for willful and wanton conduct, those allegations are barred as a matter of law. In re Chi. Flood Litig., 176 Ill. 2d 179, 196 (Ill. 1997). Thus, defendants' motion to dismiss plaintiffs' willful and wanton misconduct claims is granted.

### Count IV – Negligent Supervision

---

[6] 745 ILCS 10/3-108(b) provides: "Except as otherwise provided in this Act, neither a local public entity nor a public employee is liable for an injury caused by a failure to supervise an activity on or the use of any public property unless the employee or the local public entity has a duty to provide supervision imposed by common law, statute, ordinance, code or regulation and the local public entity or public employee is guilty of willful and wanton conduct in its failure to provide supervision proximately causing such injury."

The School District and Kelsey argue that plaintiffs' negligent supervision claim is barred by § 3-108(a) of the Tort Immunity Act.[7] Plaintiffs contend their claim is for the alleged willful and wanton supervision of Kane. As discussed above, it is clear that plaintiffs' claims of negligence are barred by the Act. Their claims of willful and wanton supervision, however, are not barred by the Tort Immunity Act. Section 3-108(a) expressly states that public employees and entities who undertake to supervise an activity on public property are immune unless willful and wanton in their supervision, proximately causing injury. Plaintiffs allege that the School District and Kelsey were willful and wanton in supervising Kane by showing "deliberate indifference and a conscious disregard for the safety and psychological well-being of their students and the plaintiffs." The School District and Kelsey also contend that § 2-201 grants them immunity from plaintiffs' negligent supervision claim. In the instant case, § 3-108(a) controls because it is more specific than § 2-201 and is clearly written to address causes of action for negligent and willful and wanton supervision. Thus, to the extent plaintiffs' claim sounds in negligence rather than wilful and wanton supervision, defendants' motion to dismiss Count IV is granted.

**Count VI – Intentional Infliction of Emotional Distress ("IIED")**

Defendants argue that plaintiffs have not alleged sufficient facts to prove their IIED claim against Kelsey, Keating, and Courtin. To state a claim for IIED under Illinois law, plaintiffs must allege that: "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that

---

[7] 745 ILCS 10/3-108(a) provides: "Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury."

14

their conduct would do so; and (3) the defendants' conduct actually caused severe emotional distress." Lifton v. Bd. of Educ. Of City of Chi., 416 F.3d 571, 579 (7th Cir. 2005) (*quoting* Thomas v. Fuerst, 345 Ill. App. 3d 929 (Ill. App. 1 Dist. 2004)). "[T]he nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." Kolegas v. Heftel Broad. Corp., 154 Ill. 2d 1, 21 (Ill. 1992).

In the instant case, defendants ask too much of plaintiffs at this stage of the litigation. Plaintiffs need not allege any facts demonstrating any element of the claim under the liberal federal pleading standards. Plaintiffs sufficiently state a claim for IIED by alleging that defendants "knew or should have known that their conduct (telling the plaintiffs to stay in Defendant Kane's class and continue to subject them to sexual harassment and racially-derogatory and vulgar language) would cause severe emotional distress to the plaintiffs." They further allege that the "defendants' conduct actually caused severe emotional distress to the plaintiffs" and that "[t]he plaintiffs suffered severe emotion distress as a direct and proximate result of defendants' illegal conduct and omissions." Finding all reasonable inferences in favor of the plaintiffs, it is reasonable that Kelsey, Keating, and Courtin's alleged conduct could be considered extreme and outrageous. Failing to stop or report a teacher who is sexually harassing his students is patently unacceptable to society. Thus, Kelsey, Keating, and Courtin's motion to dismiss Count VI is denied.

**Prayer for Punitive Damages**

At the outset, plaintiffs concede that punitive damages are not available against a municipality in § 1983 and Title IX claims. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 261 (1981). Plaintiffs are also barred from an award of punitive damages from a municipality under the Tort Immunity Act.[8] Accordingly, Plaintiffs' prayer for punitive damages against the School District is struck for all claims.

Plaintiffs may recover punitive damages, however, against Kelsey, Keating, and Courtin in their individual capacities for all surviving claims against them, with the exception of Count VI for IIED. The Illinois Supreme Court has held that punitive damages would be duplicative for an IIED claim. Knierim v. Izzo, 174 N.E.2d 125, 165 (Ill. 1961).

Defendants' motion to strike punitive damages is therefore granted as to the School District and Count VI, and denied in all other respects.

## CONCLUSION

For the reasons discussed herein, defendants' motion to dismiss is granted in part and denied in part. Counts I and III are dismissed. Count II is dismissed as against the School District, but the motion is denied as to Kelsey, Keating, and Courtin in their individual capacities. Count IV is dismissed to the extent the plaintiff's claim sounds in negligence rather than willful and wanton supervision. The motion is denied as to Count VI. Punitive damages are struck as to the School District and Count VI, but are allowed in all other respects.

Plaintiffs are directed to file an amended complaint consistent with the holdings of this opinion on or before September 15, 2006. In drafting the amended complaint, plaintiffs shall

---

[8] 745 ILCS 10/2-102 provides: "Notwithstanding any other provision of law, a local public entity is not liable to pay punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party. . . ."

each separate her respective claims as distinct counts. Defendants shall respond by October 13, 2006. This matter is set for a report on status October 19, 2006, at 9:00 a.m.

    **ENTER:**

                                                  **Robert W. Gettleman**
                                                  **United States District Judge**