**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **STEPHANIE PECK and CRYSTAL KUNTZ,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Gen No. 06 C 1153** |
| **WEST AURORA SCHOOL DISTRICT 129, LUANNE KELSEY, in her individual capacity, TRICIA KEATING, in her individual capacity, ANGIE COURTIN, formerly Angie Jackson, in her individual capacity, and KENNETH JOHN KANE,** | ) ) ) ) ) ) ) ) ) | **Judge Gettleman**  **Magistrate Judge Levin**  **JURY DEMANDED** |
| **Defendants.** | ) ) | |

## FIRST AMENDED COMPLAINT

NOW COME the Plaintiffs, STEPHANIE PECK and CRYSTAL KUNTZ, by and through their attorneys, CHAVEZ LAW FIRM, P.C. and FOOTE, MEYERS, MIELKE & FLOWERS & L.L.C., and for their First Amended Complaint against the Defendants, the WEST AURORA SCHOOL DISTRICT 129, LUANNE KELSEY, in her individual capacity, TRICIA KEATING, in her individual capacity, ANGIE COURTIN, formerly Angie Jackson, in her individual capacity, and KENNETH JOHN KANE, state as follows:

## INTRODUCTION

1.   This suit is brought by the plaintiffs, Stephanie Peck and Crystal Kuntz, who were students at West Aurora High School in Aurora, Illinois.  While students at West Aurora High School, the plaintiffs were subjected to ongoing, continuous, and repeated sexual harassment, sexual molestation, racial harassment, and improper touching by one of the West Aurora High

School teachers, Defendant Kenneth John Kane. The plaintiffs had informed various school officials and employees about Mr. Kane's inappropriate and illegal conduct, but the school officials and employees did not investigate, remediate, mitigate or otherwise prevent further acts of sexual harassment, sexual molestation, racial harassment, and improper touching by Defendant Kane. Simply, the West Aurora School District 129 and its employees and administrators turned a blind eye towards Defendant Kane's conduct, allowing Defendant Kane to continue his illegal conduct and further subjecting the plaintiffs to more of this behavior.

2. The plaintiffs seek monetary damages from Defendant Kane on claims of battery, deprivations of the plaintiffs' constitutional rights to bodily integrity under the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983, and intentional infliction of emotional distress for his sexual harassment, sexual molestation, racial harassment, and improper touching of the plaintiffs.

3. The plaintiffs, alleging that the West Aurora School District 129 failed to act and was deliberately indifferent to the plaintiffs' complaints of Defendant Kane's conduct, also seek monetary damages against the West Aurora School District 129 on claims of violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 – 1688, and for willful and wanton conduct in its supervision of Defendant Kane.

4. The plaintiffs also seek damages against LuAnne Kelsey, Tricia Keating, and Angie Courtin, in their individual capacities, for deprivations of the plaintiffs' constitutional rights to bodily integrity under the Due Process Clause of the Fourteenth Amendment and 42 U.S.C. § 1983,

and for intentional infliction of emotional distress, for failing to take appropriate actions to end Mr. Kane's conduct.

5.      All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law.

6.      There have been several tolling agreements between the plaintiffs and the West Aurora School District 129 regarding this case, from August 8, 2005 to March 1, 2006. The tolling agreement dated August 8, 2005, the tolling agreement dated November 1, 2005, the tolling agreement dated January 1, 2006, and the tolling agreement dated February 1, 2006, are attached hereto as Group Exhibit A.

## **PARTIES**

*Plaintiffs*

7.      Plaintiff Stephanie Peck (hereinafter "Plaintiff Peck") was enrolled as a student at West Aurora High School in Aurora, Illinois, from the Fall of 2000 to the Spring of 2004. At all times relevant, Plaintiff Peck was a minor. Plaintiff Peck was born on April 24, 1987

8.      Plaintiff Crystal Kuntz (hereinafter "Plaintiff Kuntz") was a student at West Aurora High School from the Fall of 2002 to June of 2006. At all times relevant, Plaintiff Kuntz was a minor. Plaintiff Kuntz was born on September 15, 1987.

*Defendants*

9.      Defendant West Aurora School District 129 (hereinafter "School District") is an organization that is responsible for operating and maintaining public schools at the elementary, junior high, and high school levels on the west side of Aurora, Illinois, in Montgomery, Illinois, and

in North Aurora, Illinois. At all times relevant, the School District operated West Aurora High School, located at 1201 West New York Street in Aurora, Illinois. At all relevant times, the School District operated, controlled, monitored and supervised the day-to-day activities and operation of West Aurora High School, and employed numerous administrators, teachers, and other school personnel at West Aurora High School.

10. Defendant LuAnne Kelsey (hereinafter "Defendant Kelsey") was the principal of West Aurora High School during the 2004-05 school year.

11. Defendant Tricia Keating (hereinafter "Defendant Keating") was a counselor at West Aurora High School at all times relevant.

12. Defendant Angie Courtin, formerly Angie Jackson (hereinafter "Defendant Courtin") was a dean at West Aurora High School at all times relevant.

13. Defendant Kenneth John Kane (hereinafter "Defendant Kane") was a teacher at West Aurora High School at all times relevant. Defendant Kane was responsible for teaching a foods and hospitality class at West Aurora High School and was also a coach of the Girls' Bowling team.

## JURISDICTION AND VENUE

14. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331. This suit is authorized and instituted pursuant to the Fourteenth Amendment, the Act of Congress known as "The Education Amendments of 1972," 20 U.S.C. §§ 1681 - 1688, and 42 U.S.C. § 1983.

15. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(B), because this

is the district in which a substantial part of the events giving rise to the claim occurred, because the defendants Kenneth John Kane, LuAnne Kelsey, Tricia Keating, and Angie Courtin all reside in this district, and because the defendant West Aurora School District 129 operates in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

*STEPHANIE PECK*

16. The plaintiff Stephanie Peck was a student in Defendant Kane's foods and hospitality class during the 2003-2004 school year.

17. While a student in Defendant Kane's foods and hospitality class, Plaintiff Peck was subject to ongoing, continuous, and repeated sexual harassment, racial harassment, sexual molestation, and improper touching by Defendant Kane.

18. For example, on several occasions, Defendant Kane would come behind Plaintiff Peck, put both of his hands on her hips, and would look over Plaintiff Peck's shoulder as she was working in class. This conduct continued to the point where Defendant Kane would pull Plaintiff Peck to his body as he grabbed her hips. Defendant Kane did this to the extent that Plaintiff Peck could feel Defendant Kane's genitals rubbing against her buttocks and backside.

19. On other occasions, Defendant Kane walked behind Plaintiff Peck and placed his full palm on her buttocks.

20. Around January 2004, Plaintiff Peck went to her counselor, Tricia Keating, to tell her that she wanted to drop out of Defendant Kane's class. Plaintiff Peck told Defendant Keating

about these incidents of inappropriate and improper touching and grabbing that she was subjected to by Defendant Kane. Defendant Keating simply thought that Mr. Kane would not engage in such conduct, because Defendant Keating believed that "he treats you girls like you were his daughters," or other words to that effect. Despite this conversation with Defendant Keating, a thorough investigation of Defendant Kane's conduct was not initiated.

21. Plaintiff Peck's friend (hereinafter "Jane Doe") also was subject to Defendant Kane's improper touching and groping.

22. In one instance, Jane Doe was bending over to pick up something off the floor. At that moment, Defendant Kane walked by and placed his full palm on Jane Doe's breasts and grabbed them. Plaintiff Peck was standing merely a few feet away and witnessed the event.

23. As a result of the ongoing, continuous, and repeated touching and grabbing by Defendant Kane, Plaintiff Peck and Jane Doe went to see Defendant Keating again in or around March of 2004. Plaintiff Peck and Jane Doe told Defendant Keating again of the improper touching and grabbing and expressed their desire to drop from Defendant Kane's class. However, Defendant Keating informed the girls that if they dropped Defendant Kane's class at that point of the year, they would not receive credit for the class and would be deemed to have failed the class. Defendant Keating acted as if Defendant Kane's improper conduct was insignificant. As a result, Plaintiff Peck remained in Defendant Kane's class.

24. Defendant Kane's conduct continued, so Plaintiff Peck saw Defendant Keating for a third time in or around April 2004. Plaintiff Peck again expressed her interest to drop Defendant Kane's class and again told Defendant Keating about the continued improper touching and

grabbing.    Once more, Defendant Keating played off Defendant Kane's conduct as insignificant.

25.    Approximately one week after Plaintiff Peck spoke with Defendant Keating for the third time about Defendant Kane's behavior, Defendant Kane was called out of his classroom into the hallway for a discussion by another employee of the School District.  After a brief discussion in the hallway, Defendant Kane came back in the classroom, visibly mad, and mentioned that "someone's lying about me." However, Defendant Kane was not removed from his duties and was not placed under extra supervision or monitoring.

26.    In or around May 2004, Plaintiff Peck went to see Defendant Keating for a fourth time and once again told Defendant Keating of Defendant Kane's continuing improper touching and grabbing and restated her wish to drop Defendant Kane's class.  Like the previous meetings, Defendant Keating informed Plaintiff Peck that dropping out of Defendant Kane's class that late in the year would result in her failing that class.

27.    About a week after seeing Defendant Keating for the fourth time, Plaintiff Peck and Defendant Kane got into an argument during class.  During this argument, Defendant Kane forcefully grabbed Plaintiff Peck's arm.  Defendant Kane, who was aware that Plaintiff Peck was pregnant at the time with her Latino boyfriend's baby, then called Plaintiff Peck a "whore" and called her unborn baby a "Spic."

28.    As a result of this in-class argument, Plaintiff Peck immediately left the classroom and informed a dean, Angie Jackson (now Angie Courtin), of the event that had just transpired.

29.    On the next day after this argument, Defendant Courtin called Plaintiff Peck down into her

office. A minute after Plaintiff Peck arrived, Defendant Kane also arrived in Defendant Courtin's office. An argument ensued, and Defendant Kane denied everything that happened.

30. Despite the repeated reports and complete awareness and knowledge of Defendant Kane's improper and illegal conduct, the School District, Defendant Keating, Defendant Courtin and other school employees failed to take any action to prevent any further harassment, touching, sexual molestation, and other unlawful conduct as described herein.

31. The School District and its agents not only failed to take any action to protect Plaintiff Peck, but in fact, the School District forced her to remain in an unsupervised classroom with Defendant Kane.

32. Furthermore, not only did the School District fail to prevent further harm to Plaintiff Peck, the school also threatened to withhold class credit from Plaintiff Peck and to give her a failing grade if she dropped out of Defendant Kane's class.

33. Defendants' herein alleged actions were willful, malicious, in bad faith, outrageous, and extraordinary.

34. Plaintiff Peck was subjected to ongoing, repeated, unwelcome, offensive, and continuous sexual harassment.

35. Plaintiff Peck suffered severe emotional distress as a direct and proximate result of the Defendants' illegal conduct and omissions, as alleged herein.

36. The ongoing, unwelcome, and continuous sexual harassment was both so severe and so pervasive that it materially altered the conditions of Plaintiff Peck's education and interfered

with her ability to attend school and obtain her education. As such, Plaintiff Peck was excluded from participation in, denied the benefits of, and subjected to discrimination under the School District's educational program.

*CRYSTAL KUNTZ*

37. The plaintiff Crystal Kuntz was in her junior year at West Aurora High School in the 2004-2005 school year. During this school year, Plaintiff Kuntz was enrolled in Defendant Kane's foods and hospitality class.

38. While a student in Defendant Kane's class, Plaintiff Kuntz was subjected to ongoing, continuous, and repeated sexual harassment, sexual molestation, and improper touching by Defendant Kane.

39. On several occasions, Defendant Kane gave Plaintiff Kuntz back and shoulder rubs. However, sometimes when Defendant Kane would give these back rubs, he would move his hands towards her front and would grope her breasts.

40. In a similar fashion to Plaintiff Peck, Defendant Kane would sometimes grab Plaintiff Kuntz's hips and pull her to his body, sometimes to the point where Plaintiff Kuntz could feel Defendant Kane's genitals through his pants.

41. At other times, Defendant Kane would make inappropriate comments to Plaintiff Kuntz.

42. On one occasion, Plaintiff Kuntz was bending over a table as she was working in class. Defendant Kane, within hearing distance of many other students, commented that Plaintiff Kuntz was in his "favorite sexual position" with his girlfriend.

43. On another occasion, Plaintiff Kuntz was bending down to get something. As she was doing

so, Defendant Kane commented "bend down and get that orange juice - you are probably used to being on your knees."

44. In another instance, Defendant Kane, within hearing distance of many others, asked Plaintiff Kuntz about a false rumor that he had heard, asking "You had sex with a black guy?"

45. Defendant Kane also made fun of Plaintiff Kuntz because she dated a Latino student.

46. Defendant Kane had issues with other school employees. He got into an argument with an African-American school janitor. Defendant Kane had told Plaintiff Kuntz and other students that someone should "tell that nigger that I have knives."

47. Finally, on one particular occasion, Defendant Kane hugged Plaintiff Kuntz from behind and then kissed her on the back of her neck.

48. Plaintiff Kuntz confided to her aunt about these incidents. Plaintiff Kuntz's aunt, who was a West Aurora High School alumnus, contacted her old school counselor, Ms. Dotti LaVoy, about these incidents.

49. As a result, Ms. LaVoy met with Plaintiff Kuntz to discuss Defendant Kane's alleged conduct. Plaintiff Kuntz described to Ms. LaVoy the incidents of improper touching and groping and about the vulgar and sexually-derogatory language.

50. During this meeting, Ms. LaVoy had mentioned that other students had complained about Defendant Kane before.

51. At a later meeting, Ms. LaVoy told Plaintiff Kuntz that she informed Defendant Kelsey about her initial discussion with Plaintiff Kuntz.

52. Despite Defendant Kelsey's knowledge, Plaintiff Kuntz was not removed from Defendant

Kane's classroom, where his conduct continued.  The School District did not suspend or remove Defendant Kane from his duties as a teacher.  Furthermore, the School District did not put another adult in the room with Defendant Kane to supervise him when he was with students, and the school did not contact the Illinois Department of Children and Family Services.

53.    Defendant Kane's conduct continued until a few weeks after Kuntz's first meeting with LaVoy, when the plaintiffs' counsel wrote a letter (in late February of 2005) to the School District demanding that Defendant Kane be removed from his teaching duties.  After this letter, Defendant Kane was visibly rude and unpleasant with Plaintiff Kuntz.

54.    Despite repeated reports from the plaintiffs of Defendant Kane's improper conduct and the letter from the plaintiffs' counsel, the School District did not do anything to keep Defendant Kane away from his students and did not place any extra supervision or monitoring of him.

55.    Defendants' herein alleged actions were willful, malicious, in bad faith, outrageous, and extraordinary.

56.    Defendants' willfully, maliciously, knowingly, and intentionally violated federal law.

57.    Plaintiff Kuntz was subjected to ongoing, repeated, unwelcome, offensive, and continuous sexual harassment.

58.    The ongoing, unwelcome, and continuous sexual harassment was both so severe and so pervasive that it materially altered the conditions of Plaintiff Kuntz's education and interfered with her ability to attend school and obtain her education.  As such, Plaintiff Kuntz was excluded from participation in, denied the benefits of, and subjected to discrimination

Page 11 of 28

under the School District's educational program.

*Kenneth John Kane*

59.  Neither the School District nor any of its employees or agents contacted the Department of Children and Family Services regarding Mr. Kane's improper and illegal conduct.

60.  An investigation of Defendant Kane's improper conduct did not begin until the plaintiffs' counsel contacted the proper authorities.

61.  Following the investigation, a grand jury of Kane County, Illinois, indicted Defendant Kane on six counts of aggravated criminal sexual abuse and four counts of aggravated battery on August 12, 2005.

62.  Subsequently, an arrest warrant was issued for the arrest of Defendant Kane on August 12, 2005. The arrest warrant was executed, and Defendant Kane was arrested, on August 18, 2005.

## COUNT I - VIOLATIONS OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 (Plaintiff Peck v. School District)

63.  Plaintiff Peck reinstates and incorporates by reference all preceding paragraphs, as part of this Count of the Complaint.

64.  Count I is being brought by Plaintiff Peck against Defendant West Aurora School District 129.

65.  The School District receives financial assistance from the federal government. As such, the School District is subject to the provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 - 1688.

66.     The School District created a hostile learning environment by failing to prevent further improper conduct by Defendant Kane.

67.     As a student, as a minor, and as a girl, Plaintiff Peck belongs to a protected class.

68.     Plaintiff Peck was subject to ongoing, continuous, and repeated sexual harassment, racial harassment, sexual molestation, and improper touching by Defendant Kane.

69.     The harassment was based on sex.

70.     The harassment was so pervasive that it altered the conditions of Plaintiff Peck's education, including:

    a.     Plaintiff Peck's grades suffered during the 2003-2004 school year;

    b.     Being subjected to Defendant Kane's improper behavior has affected Plaintiff Peck's psychological well-being;

    c.     Defendant Kane's conduct created an abusive, intimidating, and hostile school environment;

    d.     Defendant Kane's conduct otherwise affected and interfered with Plaintiff Peck's ability to attend school and perform her studies and activities.

71.     Various school officials, including Defendant Keating and Defendant Courtin, had authority vested in them by the School District with the duty to supervise the conduct and actions of Defendant Kane.  These same school officials, including Defendant Keating and Defendant Courtin, had the authority to take action to end Defendant Kane's improper conduct.

72.     Defendant Keating, Defendant Courtin, and other school officials with authority to end Defendant Kane's conduct knew about his conduct, and in turn the School District had actual

notice of Defendant Kane's conduct, when they were repeatedly informed of his actions, by Plaintiff Peck and by other students.

73.  However, Defendant Keating, Defendant Courtin, and other school officials with authority to end Defendant Kane's conduct failed to use that authority to end Defendant Kane's improper conduct.

74.  The School District had actual notice of Defendant Kane's conduct but did not act towards preventing further harm to students.

75.  The School District's knowledge of Defendant Kane's conduct and its subsequent failure to act upon this knowledge demonstrates that the School District acted with a deliberate indifference and conscious disregard towards Defendant Kane's conduct and for the safety and psychological well-being of the plaintiffs and the students. The School District's response to Defendant Kane's conduct was clearly unreasonable in light of the known acts of harassment.

76.  As such, the School District subjected Plaintiff Peck to discrimination under a federal financially-assisted educational program and denied the plaintiffs the benefit of a proper education.

## COUNT II - VIOLATIONS OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
### (Plaintiff Kuntz v. School District)

77.  Plaintiff Kuntz reinstates and incorporates by reference all preceding paragraphs, as part of this Count of the Complaint.

78.  Count II is being brought by Plaintiff Kuntz against Defendant West Aurora School District

Page 14 of 28

129.

79. The School District receives financial assistance from the federal government. As such, the School District is subject to the provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 - 1688.

80. The School District created a hostile learning environment by failing to prevent further improper conduct by Defendant Kane.

81. As a student, as a minor, and as a girl, Plaintiff Kuntz belongs to a protected class.

82. Plaintiff Kuntz was subject to ongoing, continuous, and repeated sexual harassment, racial harassment, sexual molestation, and improper touching by Defendant Kane.

83. The harassment was based on sex.

84. The harassment was so pervasive that it altered the conditions of Plaintiff Kuntz's education, including:

   a. Plaintiff Kuntz has trouble dealing with males subsequent to being subjected to Defendant Kane's improper conduct;

   b. Being subjected to Defendant Kane's improper behavior has affected Plaintiff Kuntz's psychological well-being;

   c. Defendant Kane's conduct created an abusive, intimidating, and hostile school environment;

   d. Defendant Kane's conduct otherwise affected and interfered with Plaintiff Kuntz's ability to attend school and perform her studies and activities.

85. Various school officials, including Defendant Kelsey, Defendant Courtin, and Defendant

Keating, had authority vested in them by the School District with the duty to supervise the conduct and actions of Defendant Kane. These same school officials, including Defendant Kelsey, Defendant Courtin, and Defendant Keating, had the authority to take action to end Defendant Kane's improper conduct.

86. Defendant Kelsey, Defendant Courtin, Defendant Keating, and other school officials with authority to end Defendant Kane's conduct knew about Defendant Kane's conduct, and in turn the School District had actual notice of Defendant Kane's conduct, when they were repeatedly informed of his actions, by Plaintiff Kuntz and by other students like Plaintiff Peck.

87. However, Defendant Kelsey, Defendant Courtin, Defendant Keating, and other school officials with authority to end Defendant Kane's conduct failed to use that authority to end Defendant Kane's improper conduct.

88. The School District had actual notice of Defendant Kane's conduct but did not act towards preventing further harm to students.

89. The School District's knowledge of Defendant Kane's conduct and its subsequent failure to act upon this knowledge demonstrates that the School District acted with a deliberate indifference and conscious disregard towards Defendant Kane's conduct and for the safety and psychological well-being of the plaintiffs and the students. The School District's response to Defendant Kane's conduct was clearly unreasonable in light of the known acts of harassment.

90. As such, the School District subjected Plaintiff Kuntz to discrimination under a federal financially-assisted educational program and denied the plaintiffs the benefit of a proper education.

## COUNT III - VIOLATIONS OF 42 U.S.C. § 1983
### (Plaintiff Peck v. Defendants Keating, Courtin, and Kane)

91. Plaintiff Peck reinstates and incorporates by reference all preceding paragraphs, as part of this Count of the Complaint.

92. Count III is being brought by Plaintiff Peck against Defendants Tricia Keating, Angie Courtin, and Kenneth John Kane.

93. Defendant Kane violated Plaintiff Peck's constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment.

94. By allowing Defendant Kane's improper conduct to continue, Defendant Keating and Defendant Courtin violated Plaintiff Peck's constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment.

95. Defendant Keating, Defendant Courtin, Defendant Kane, the school board, school administrators, and school employees were all acting under color of state law.

96. Plaintiff Peck was continuously and repeatedly subjected to a clear and persistent pattern of sexual abuse, sexual molestation, sexual harassment, and other inappropriate conduct by Defendant Kane, a school employee.

97. Defendant Keating and Defendant Courtin were repeatedly informed of Defendant Kane's illegal and improper conduct affecting its students. As such, they had actual notice of Defendant Kane's conduct.

98. Defendant Keating and Defendant Courtin turned a blind eye toward Defendant Kane's conduct and tacitly approved this unconstitutional conduct by their inaction.

99. Furthermore, Defendant Keating and Defendant Courtin acted with deliberate indifference and conscious disregard for the safety and well-being of Plaintiff Peck when they failed to act, failed to thoroughly investigate these allegations, and failed to prevent further harm from occurring, resulting in an unreasonable risk to the safety of Plaintiff Peck and other students.

100. When Defendant Keating and Defendant Courtin failed to investigate the allegations of Defendant Kane's improper conduct, they encouraged a climate to flourish where innocent children and students were victimized.

101. This constitutes a deliberate and reckless indifference to the consequences, the consequences being that Plaintiff Peck and other students were further subjected to Defendant Kane's illegal and improper conduct.

102. This deliberate indifference and conscious disregard for Plaintiff Peck's rights directly and proximately caused constitutional harms to Plaintiff Peck, including further violations of her right to bodily integrity and the right to be free from continued and ongoing sexual molestation, sexual harassment, inappropriate touching, and racial harassment.

## COUNT IV - VIOLATIONS OF 42 U.S.C. § 1983
### (Plaintiff Kuntz v. Defendants Kelsey, Keating, Courtin, and Kane)

103.    Plaintiff Kuntz reinstates and incorporates by reference all preceding paragraphs, as part of this Count of the Complaint.

104.    Count IV is being brought by Plaintiff Kuntz against Defendants LuAnne Kelsey, Tricia Keating, Angie Courtin, and Kenneth John Kane.

105.    Defendant Kane violated Plaintiff Kuntz's constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment.

106.    By allowing Defendant Kane's improper conduct to continue, Defendant Kelsey, Defendant Keating, and Defendant Courtin violated Plaintiff Kuntz's constitutional right to bodily integrity under the Due Process Clause of the Fourteenth Amendment.

107.    Defendant Kelsey, Defendant Keating, Defendant Courtin, Defendant Kane, the school board, school administrators, and school employees were all acting under color of state law.

108.    Plaintiff Kuntz was continuously and repeatedly subjected to a clear and persistent pattern of sexual abuse, sexual molestation, sexual harassment, and other inappropriate conduct by Defendant Kane, a school employee.

109.    Defendant Kelsey, Defendant Keating, and Defendant Courtin were repeatedly informed of Defendant Kane's illegal and improper conduct affecting its students.  As such, they had actual notice of Defendant Kane's conduct.

110.    Defendant Kelsey, Defendant Keating, and Defendant Courtin turned a blind eye toward Defendant Kane's conduct and tacitly approved this unconstitutional conduct by their inaction.

111.   Furthermore, Defendant Kelsey, Defendant Keating, and Defendant Courtin acted with deliberate indifference and conscious disregard for the safety and well-being of the students, including Plaintiff Kuntz, when they failed to act, failed to thoroughly investigate these allegations, and failed to prevent further harm from occurring, resulting in an unreasonable risk to the safety of Plaintiff Kuntz and other students.

112.   When Defendant Kelsey, Defendant Keating, and Defendant Courtin failed to investigate the allegations of Defendant Kane's improper conduct, they encouraged a climate to flourish where innocent children and students were victimized.

113.   This constitutes a deliberate and reckless indifference to the consequences, the consequences being that Plaintiff Kuntz and other students were further subjected to Defendant Kane's illegal and improper conduct.

114.   This deliberate indifference and conscious disregard for Plaintiff Kuntz's rights directly and proximately caused constitutional harms to Plaintiff Kuntz, including further violations of her right to bodily integrity and the right to be free from continued and ongoing sexual molestation, sexual harassment, inappropriate touching, and  racial harassment.

### COUNT V – WILLFUL AND WANTON MISCONDUCT FOR SUPERVISION
### (Plaintiff Peck v. School District)

115.   Plaintiff Peck reinstates and incorporates by reference all preceding paragraphs, as part of this Count of the Complaint.

116.   Count V is being brought by Plaintiff Peck against Defendant West Aurora School District 129.

117.    The School District owed a duty to Plaintiff Peck to refrain from willful and wanton misconduct in the supervision their employees, including Defendant Kane, which would endanger the safety and psychological well-being of the plaintiffs.

118.    The School District, through its employees and administrators, was repeatedly informed of Defendant Kane's illegal and improper conduct affecting its students, including the plaintiffs, but omitted to act on this information.

119.    Despite repeated warnings about Defendant Kane's conduct, the School District breached its duties to Plaintiff Peck by committing the following willful and/or wanton acts and/or omissions:

    a.    By failing to properly monitor and supervise Defendant Kane while he was with students;

    b.    By failing to undertake a thorough investigation of the allegations of Defendant Kane's improper conduct;

    c.    By failing to place other adults in Defendant Kane's classroom while he was in the presence of, or in contact with, students;

    d.    By failing to hire competent and adequately trained school personnel; and

    e.    By failing to set up adequate training, procedures, and lines of communication to report any serious alleged inappropriate misconduct.

120.    Furthermore, by failing to do any of the aforementioned acts, the School District has shown deliberate indifference and a conscious disregard for the safety and psychological well-being of Plaintiff Peck and other students, amounting to willful and wanton misconduct.

121. As a direct and proximate result of the School District's willful and wanton misconduct in the supervision of Defendant Kane, and as a direct and proximate result of its deliberate indifference towards Defendant Kane's improper touching, grabbing, and groping, Plaintiff Peck suffered permanent psychological and emotional injuries in the following ways:

    a. By subjecting Plaintiff Peck and other students to further grabbing, groping, and other inappropriate touching by Defendant Kane;

    b. By subjecting Plaintiff Peck and other students to further inappropriate, vulgar, and racially-derogatory language by Defendant Kane; and

    c. By subjecting Plaintiff Peck to further emotional distress, mental anguish, and embarrassment.

### COUNT VI - WILLFUL AND WANTON MISCONDUCT FOR SUPERVISION
**(Plaintiff Kuntz v. School District and Defendant Kelsey)**

122. Plaintiff Kuntz reinstates and incorporates by reference all preceding paragraphs, as part of this Count of the Complaint.

123. Count VI is being brought by Plaintiff Kuntz against Defendants West Aurora School District 129 and LuAnne Kelsey.

124. The School District and Defendant Kelsey owed a duty to Plaintiff Kuntz to refrain from willful and wanton misconduct in the supervision their employees, including Defendant Kane, which would endanger the safety and psychological well-being of the plaintiffs.

125. The School District, through its employees and administrators, and Defendant Kelsey were repeatedly informed of Defendant Kane's illegal and improper conduct affecting its students, including the plaintiffs, but omitted to act on this information.

126. Despite repeated warnings about Defendant Kane's conduct, the School District and Defendant Kelsey breached their duties to Plaintiff Kuntz by committing the following willful and/or wanton acts and/or omissions:

    a. By failing to properly monitor and supervise Defendant Kane while he was with students;

    b. By failing to undertake a thorough investigation of the allegations of Defendant Kane's improper conduct;

    c. By failing to place other adults in Defendant Kane's classroom while he was in the presence of, or in contact with, students;

    d. By failing to hire competent and adequately trained school personnel; and

    e. By failing to set up adequate training, procedures, and lines of communication to report any serious alleged inappropriate misconduct.

127. Furthermore, by failing to do any of the aforementioned acts, the School District and Defendant Kelsey have shown deliberate indifference and a conscious disregard for the safety and psychological well-being of Plaintiff Kuntz and other students, amounting to willful and wanton misconduct.

128. As a direct and proximate result of the School District's and Defendant Kelsey's willful and wanton misconduct in the supervision of Defendant Kane, and as a direct and proximate

result of their deliberate indifference towards Defendant Kane's improper touching, grabbing, and groping, Plaintiff Kuntz suffered permanent psychological and emotional injuries in the following ways:

a.  By subjecting Plaintiff Kuntz and other students to further grabbing, groping, and other inappropriate touching by Defendant Kane;

b.  By subjecting Plaintiff Kuntz and other students to further inappropriate, vulgar, and racially-derogatory language by Defendant Kane; and

c.  By subjecting Plaintiff Kuntz to further emotional distress, mental anguish, and embarrassment.

### COUNT VII – BATTERY
**(Plaintiff Peck v. Defendant Kane)**

129.  Plaintiff Peck reinstates and incorporates by reference all preceding paragraphs, as part of this Count of the Complaint.

130.  Count VII is being brought by Plaintiff Peck against Defendant Kenneth John Kane.

131.  Defendant Kane intended to cause an offensive or harmful contact on Plaintiff Peck's person.

132.  Defendant Kane did not have the consent from Plaintiff Peck to commit this offensive or harmful contact.

133.  Defendant Kane did indeed cause the offensive contact, by touching, grabbing, and groping Plaintiff Peck in many inappropriate and improper ways, including the grabbing of the her breasts and buttocks, by rubbing his genitals on the buttocks of the her, and by otherwise improperly touching Plaintiff Peck's person.

134.    Plaintiff Peck was very offended and hurt by Defendant Kane's inappropriate touching, grabbing, and groping.

## COUNT VIII – BATTERY
### (Plaintiff Kuntz v. Defendant Kane)

135.    Plaintiff Kuntz reinstates and incorporates by reference all preceding paragraphs, as part of this Count of the Complaint.

136.    Count VIII is being brought by Plaintiff Kuntz against Defendant Kenneth John Kane.

137.    Defendant Kane intended to cause an offensive or harmful contact on Plaintiff Kuntz's person.

138.    Defendant Kane did not have the consent from Plaintiff Kuntz to commit this offensive or harmful contact.

139.    Defendant Kane did indeed cause the offensive contact, by touching, grabbing, and groping Plaintiff Kuntz in many inappropriate and improper ways, including the grabbing of the her breasts and buttocks, by rubbing his genitals on the buttocks of the her, and by otherwise improperly touching Plaintiff Kuntz's person.

140.    Plaintiff Kuntz was very offended and hurt by Defendant Kane's inappropriate touching, grabbing, and groping.

## COUNT IX - INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS
### (Plaintiff Peck v. Defendants Kane, Keating, and Courtin)

141.    Plaintiff Peck reinstates and incorporates by reference all preceding paragraphs, as part of this Count of the Complaint.

142. Count IX is being brought by Plaintiff Peck against Defendants Kenneth John Kane, Tricia Keating, and Angie Courtin.

143. Defendant Kane's conduct of sexual harassment, sexual molestation, racial harassment, and other inappropriate behavior was extreme and outrageous.

144. Defendant Kane intended to inflict severe emotional distress on Plaintiff Peck or should have known that his extreme and outrageous conduct would inflict severe emotional distress upon Plaintiff Peck.

145. Likewise, Defendants Keating and Courtin knew or should have known that their conduct (forcing Plaintiff Peck to stay in Defendant Kane's class and continue to subject her to sexual harassment and racially-derogatory and vulgar language) would cause severe emotional distress to Plaintiff Peck.

146. The defendants' conduct actually caused severe emotional distress to Plaintiff Peck.

147. Plaintiff Peck suffered severe emotional distress as a direct and proximate result of the Defendants' illegal conduct and omissions, as alleged herein.

148. Defendant Kane's conduct would cause any reasonable person to suffer severe emotional distress.

## COUNT X - INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS
### (Plaintiff Kuntz v. Defendants Kane and Kelsey)

149. Plaintiff Kuntz reinstates and incorporates by reference all preceding paragraphs, as part of this Count of the Complaint.

150. Count X is being brought by Plaintiff Kuntz against Defendants Kenneth John Kane and LuAnne Kelsey.

151. Defendant Kane's conduct of sexual harassment, sexual molestation, racial harassment, and other inappropriate behavior was extreme and outrageous.

152. Defendant Kane intended to inflict severe emotional distress on Plaintiff Kuntz or should have known that his extreme and outrageous conduct would inflict severe emotional distress upon Plaintiff Kuntz.

153. Likewise, Defendant Kelsey knew or should have known that her conduct (forcing Plaintiff Kuntz to stay in Defendant Kane's class and continue to subject her to sexual harassment and racially-derogatory and vulgar language) would cause severe emotional distress to Plaintiff Kuntz.

154. The defendants' conduct actually caused severe emotional distress to Plaintiff Kuntz.

155. Plaintiff Kuntz suffered severe emotional distress as a direct and proximate result of the Defendants' illegal conduct and omissions, as alleged herein.

156. Defendant Kane's conduct would cause any reasonable person to suffer severe emotional distress.

WHEREFORE, the Plaintiffs, STEPHANIE PECK and CRYSTAL KUNTZ, request the following relief:

a.      Acceptance of jurisdiction of this cause;

b.      Actual and compensatory damages against defendants Kenneth John Kane, West Aurora School District 129, LuAnne Kelsey, Tricia Keating, and Angie Courtin;

c.      Punitive damages against defendants Kenneth John Kane, LuAnne Kelsey, Tricia Keating, and Angie Courtin (except for Counts IX and X);

d.      An award of litigation costs and expenses, including reasonable attorneys' fees; and

e.      All other statutory and common law damages to which Plaintiffs may be entitled to and such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a jury trial on all claims so triable in this action.

STEPHANIE PECK and CRYSTAL KUNTZ

BY: One of the plaintiffs' attorneys

_____

Kathleen C. Chavez
CHAVEZ LAW FIRM, P.C.
416 S. Second Street
Geneva, IL 60134
(630) 232-4480
Attorney No. 06255735

Robert M. Foote (Atty No. 03124325)
David P. Neuman (Atty No. 06286955)
FOOTE, MEYERS, MIELKE, &
FLOWERS, L.L.C.
416 S. Second Street
Geneva, IL 60134
(630) 232-6333

Page 28 of 28

## TOLLING AGREEMENT

This TOLLING AGREEMENT ("Agreement") is effective as of August 8, 2005, and executed by and amongst Crystal Kuntz ("Kuntz") and Stephanie Peck ("Peck"), and West Aurora School District 129.

WHEREAS, Kuntz and Peck have placed West Aurora School District 129 on notice that Crystal Kuntz and Stephanie Peck are investigating potential claims against West Aurora School District 129 arising out of Mr. Kane's alleged abusive conduct ("Potential Claims");

WHEREAS, Kuntz and Peck have requested that West Aurora School District 129 enter into a tolling agreement with respect to the Potential Claims; and

WHEREAS, Kuntz, Peck and West Aurora School District 129 agree it is in the interest of these parties to attmept to resove any disagreement regarding the Potential Claims without litigation, if possible.

NOW THEREFORE, for and in consideration of the recitals and the agreements set forth below, the parties do hereby agree as follows:

1. Kuntz, Peck and West Aurora School District 129 agree all applicable statutes of limitations shall be tolled as of August 8, 2005, and ending by the terms of this Agreement on November 8, 2005 (the "Tolling Period") unless extended, in writing, by Kuntz, Peck and West Aurora School District 129 with respect to any claims, actions or causes of action regarding the Potential Claims which may otherwise become barred during the Tolling Perid by any applicable statute of limitations.

2. Kuntz and Peck agree to forebear, during the Tolling Period, from filing any lawsuit based on any of the Potential Claims.

3. The parties agree this Agreement shall not have the effect of reviving any period of limitations that expired before August 8, 2005.

4. The parties agree the execution of this Agreement does not constitute an admission of liability by West Aurora School District 129 or an admission of the validity of any of the Potential Claims, all of which are denied by West Aurora School District 129, nor the waiver of any right, claim, or cause of action by Kuntz and Peck. The execution of this Agreement does not constitute an admission by the parties that any Potential Claim would otherwise be barred at this time nor during the Tolling Period.

5. The parties agree this Agreement and all communications concerning or related to this Agreement are to be considered to be consistent with Illinois law and will not be admissible in any legal proceeding. This shall not apply to bar any information, otherwise admissible, in any legal action available to either party

**EXHIBIT**

A

through means other than this Agreement.

6.  Nothing in this Agreement shall be construed as waiver of any choice of law, rules, jurisdiction or venue.

7.  The undersigned representative of each party warrants be or she is fully authorized to enter into the terms and conditions of this Agreement and to execute and bind such party to this Agreement.

FOR WEST AURORA SCHOOL DISTRICT 129

By: _Cheryl A Warzynski_

Name: _CHERYL A WARZYNSKI_

Title: _MEMBER - DYKEMA GOSSETT Rooks Pitts PLLC_

By: _____

Name: _____

Title: _____

## TOLLING AGREEMENT

THIS TOLLING AGREEMENT ("Agreement") is effective as of November 1, 2005, and executed by and amongst Crystal Kuntz ("Kuntz") and Stephanie Peck ("Peck") and West Aurora School District 129.

WHEREAS, Kuntz and Peck have placed West Aurora School District 129 on notice that Kuntz and Peck are investigating potential claims against West Aurora School District 129 arising out of Mr. Kane's alleged abusive conduct. ("Potential Claims");

WHEREAS, Kuntz and Peck have requested that West Aurora School District 129 enter into a tolling agreement with respect to the Potential Claims; and

WHEREAS, Kuntz and Peck and West Aurora School District 129 agree it is in the interest of these parties to attempt to resolve any disagreement regarding the Potential Claims without litigation, if possible.

NOW THEREFORE, for and in consideration of the recitals and the agreements set forth below, the parties do hereby agree as follows:

1. Kuntz and Peck and West Aurora School District 129 agree all applicable statutes of limitations shall be tolled as of November 1, 2005, and ending by the terms of this Agreement on December 31, 2005 (the "Tolling Period") unless extended, in writing, by Kuntz and Peck and West Aurora School District 129 with respect to any claims, actions or causes of action regarding the Potential Claims which may otherwise become barred during the Tolling Period by any applicable statute of limitations.

2. Kuntz and Peck agree to forebear, during the Tolling Period, from filing any lawsuit based on any of the Potential Claims.

3. The parties agree this Agreement shall not have the effect of reviving any period of limitations that expired before November 1, 2005.

4. The parties agree the execution of this Agreement does not constitute an admission of liability by West Aurora School District 129 or an admission of the validity of any of the Potential Claims, all of which are denied by West Aurora School District 129, nor the waiver of any right, claim, or cause of action by Kuntz and Peck. The execution of this Agreement does not constitute an admission by the parties that any Potential Claim would otherwise be barred at this time nor during the Tolling Period.

5. The parties agree this Agreement and all communications concerning or related to this Agreement are to be considered to be consistent with Illinois law and will not

be admissible in any legal proceeding. This shall not apply to bar any information, otherwise admissible, in any legal action available to either party through means other than this Agreement.

6. Nothing in this Agreement shall be construed as waiver of any choice of law, rules, jurisdiction or venue.

7. The undersigned representative of each party warrants he or she is fully authorized to enter into the terms and conditions of this Agreement and to execute and bind such party to this Agreement.

By: _____
Name: CHERYL I INTERRANTE
Title: Attorney

By: _____
Name: Kathleen Chavez
Title: Attorney

CHICAGO\2134724.3
ID\CAW

CH\350952.1

Dec 27 05 11:31a     FOOTE&MEYERS          630 845 8902          p.2

# TOLLING AGREEMENT

This TOLLING AGREEMENT ("Agreement") is effective as of January 1, 2006, and executed by and amongst Crystal Kuntz ("Kuntz") and Stephanie Peck ("Peck"), and West Aurora School District 129.

WHEREAS, Kuntz and Peck have placed West Aurora School District 129 on notice that Crystal Kuntz and Stephanie Peck are investigating potential claims against West Aurora School District 129 arising out of Mr. Kane's alleged abusive conduct ("Potential Claims");

WHEREAS, Kuntz and Peck have requested that West Aurora School District 129 enter into a tolling agreement with respect to the Potential Claims; and

WHEREAS, Kuntz, Peck and West Aurora School District 129 agree it is in the interest of these parties to attempt to resolve any disagreement regarding the Potential Claims without litigation, if possible.

NOW THEREFORE, for and in consideration of the recitals and the agreements set forth below, the parties do hereby agree as follows:

1.   Kuntz, Peck and West Aurora School District 129 agree all applicable statutes of limitations shall be tolled as of January 1, 2006, and ending by the terms of this Agreement on February 1, 2006 (the "Tolling Period") unless extended, in writing, by Kuntz, Peck and West Aurora School District 129 with respect to any claims, actions or causes of action regarding the Potential Claims which may otherwise become barred during the Tolling Period by any applicable statute of limitations.

2.   Kuntz and Peck agree to forebear, during the Tolling Period, from filing any lawsuit based on any of the Potential Claims.

3.   The parties agree this Agreement shall not have the effect of reviving any period of limitations that expired before execution of the initial tolling agreement executed in this matter.

4.   The parties agree the execution of this Agreement does not constitute an admission of liability by West Aurora School District 129 or an admission of the validity of any of the Potential Claims, all of which are denied by West Aurora School District 129, nor the waiver of any right, claim, or cause of action by Kuntz and Peck. The execution of this Agreement does not constitute an admission by the parties that any Potential Claim would otherwise be barred at this time nor during the Tolling Period.

5.   The parties agree this Agreement and all communications concerning or related to this Agreement are to be considered to be consistent with Illinois law and will not be admissible in any legal proceeding. This shall not apply to bar any

information, otherwise admissible, in any legal action available to either party through means other than this Agreement.

6.  Nothing in this Agreement shall be construed as waiver of any choice of law, rules, jurisdiction or venue.

7.  The undersigned representative of each party warrants be or she is fully authorized to enter into the terms and conditions of this Agreement and to execute and bind such party to this Agreement.

By: _____
Name: David Neuman
Title: Attorney

By: _____
Name: Peter W. Wilson JR.
Title: Attorney

JAN-31-2006 14:27 From:

Jan 30 06 04:00p  FOOTE MEYERS  Case: 1:06-cv-01153 Document #: 41 Filed: 09/15/06 Page 35 of 36 PageID #:286  To:18308458992  630 845 8982  P.2/3  p.2

## TOLLING AGREEMENT

This TOLLING AGREEMENT ("Agreement") is effective as of February 1, 2006, and executed by and amongst Crystal Kuntz ("Kuntz") and Stephanie Peck ("Peck"), and West Aurora School District 129.

WHEREAS, Kuntz and Peck have placed West Aurora School District 129 on notice that Crystal Kuntz and Stephanie Peck are investigating potential claims against West Aurora School District 129 arising out of Mr. Kane's alleged abusive conduct ("Potential Claims");

WHEREAS, Kuntz and Peck have requested that West Aurora School District 129 enter into a tolling agreement with respect to the Potential Claims; and

WHEREAS, Kuntz, Peck and West Aurora School District 129 agree it is in the interest of these parties to attempt to resolve any disagreement regarding the Potential Claims without litigation, if possible.

NOW THEREFORE, for and in consideration of the recitals and the agreements set forth below, the parties do hereby agree as follows:

1.  Kuntz, Peck and West Aurora School District 129 agree all applicable statutes of limitations shall be tolled as of February 1, 2006, and ending by the terms of this Agreement on March 1, 2006 (the "Tolling Period") unless extended, in writing, by Kuntz, Peck and West Aurora School District 129 with respect to any claims, actions or causes of action regarding the Potential Claims which may otherwise become barred during the Tolling Period by any applicable statute of limitations.

2.  Kuntz and Peck agree to forebear, during the Tolling Period, from filing any lawsuit based on any of the Potential Claims.

3.  The parties agree this Agreement shall not have the effect of reviving any period of limitations that expired before execution of the initial tolling agreement executed in this matter.

4.  The parties agree the execution of this Agreement does not constitute an admission of liability by West Aurora School District 129 or an admission of the validity of any of the Potential Claims, all of which are denied by West Aurora School District 129, nor the waiver of any right, claim, or cause of action by Kuntz and Peck. The execution of this Agreement does not constitute an admission by the parties that any Potential Claim would otherwise be barred at this time nor during the Tolling Period.

5.  The parties agree this Agreement and all communications concerning or related to this Agreement are to be considered to be consistent with Illinois law and will not be admissible in any legal proceeding. This shall not apply to bar any information, otherwise admissible, in any legal action available to either party

through means other than this Agreement.

6.  Nothing in this Agreement shall be construed as waiver of any choice of law, rules, jurisdiction or venue.

7.  The undersigned representative of each party warrants be or she is fully authorized to enter into the terms and conditions of this Agreement and to execute and bind such party to this Agreement

By: _____
Name: _David Newman_____
Title: __Attorney_____

By: _____
Name: _Cheryl Warzynski____
Title: __Attorney_____